The case on this morning's docket is the case of Illinois Farmers Insurance Company v. William Farrow, executor of the state of Robert Farrow, deceased in Rosalynn Wells. And we have here Mr. Dan Worker. Oh, we are missing our attorney. So I guess we are not receiving him. Well, they signed in. Yeah, they may just need to be retrieved. Well, you can get settled and go ahead and be prepared. Okay. Real quick, if I do this by myself. Well, the other one is here. So we've already announced the case, so you may proceed, Mr. Worker. Good morning. Good morning. Please report. My name is Dan Worker, and I represent the opponent, Illinois Farmers, in this case. The main issue that we're asking the court to focus on is whether or not the insurer and claimant in this case met its burden of proof of showing that the shooting that took place was accidental to bring it within the coverage of Illinois Farmers Insurance Policy. It is Farmers' position that the claimant and the insurer failed to meet that burden in establishing any facts to show that the shooting that took place to Ms. Wells was accidental. In fact, it's Farmers' position that the allegations of the complaint are so insufficient that it didn't even create a duty to defend. In its initial ruling, the trial court looked solely at the allegations of the complaint, liberally construed them, and found that there was an occurrence as defined by the policy. After making that finding, the court found that there was no proof on the part of Illinois Farmers that the conduct was intentional. On a motion for reconsideration, we asked the trial court to identify those facts that it relied on in making that ruling and entering summary judgment against Illinois Farmers and denying its motion for summary judgment. The court, in that ruling, and the transcript is included in the record, indicated that it considered all the depositions in the case that were submitted, the complaint itself, in insulphobic. Now, if the court takes a look at the complaint at issue in the underlying case, the allegations in that complaint, the amended complaint, are that the insurer negligently handled a loaded gun in the vicinity of the plaintiff, shooting said weapon in the vicinity of the plaintiff, failing to make sure that the gun was loaded, failing to make sure that the safety was on it, and carelessly caused the firearm to discharge in the vicinity of the plaintiff. The only difference between the original complaint and the amended complaint in this case is that the claimant added allegations that it was her belief that the shooting was accidental because she had no reason to believe that the shooting would be intentional. In the depositions in the underlying case, as well as the depositions overtaken in this case, the claimant, Ms. Wells, admitted she had no recollection whatsoever of the accident, of the shooting in question. She has no recollection of even seeing Mr. Farrow, the farmer's insurer, with the gun. She did testify in the underlying case, however, that she knew that Mr. Farrow kept the gun in a bureau in his living room where they were at just prior to the shooting. Just prior to the shooting, Mr. Farrow, the farmer's insurer, was somewhat irritated that Ms. Wells wanted to leave for the evening and was concerned that she wasn't going to come back because on prior occasions that had been the case. So after this discussion took place, there was a shooting. Ms. Wells woke up on the floor. Mr. Farrow was sitting next to her and made the proclamation that I shot you, dummy. Now, based on these facts and the conduct that took place immediately after the shooting, there is no indication at all or any facts established by the claimant or the insurer to establish that the shooting itself was accidental. There was no testimony that the gun accidentally discharged, that he was doing something with the gun in a negligent manner just before the shooting. In fact, as I mentioned earlier, Ms. Wells has no recollection whatsoever of the incident in question. In order to do that, the insurer, and by extension the claimant, would have to show that the shooting occurred accidentally, that there was some act on the part of the insurer that caused the weapon to accidentally discharge. And we have no such facts in this case. And based on Ms. Wells' testimony that she has no recollection of what occurred, it is clear that there is no way that she can meet that burden in this case. What is your definition of the difference between an occurrence and an accident? An occurrence is slightly broader than an accident. And the argument was raised that our policy is somewhat ambiguous and that we include the term occurrence within the Intentional Act Exclusion. Occurrence includes an accident or repeated exposure to a general condition. Accident is not defined in the policy, but there have been a number of cases, not only in this district, but in the rest of the districts, which have defined accident to give it its ordinary and plain meaning, which means an unforeseen occurrence. An unforeseen occurrence. Yes. And if you look at our policy language, Your Honor, with regards to the Intentional Act Exclusion, it says an occurrence that does not include intentional conduct on the part of the insurer. And here, we don't even need to reach the issue of whether or not the Intentional Act Exclusion applies because the claimant and insurer never set forth any facts on which this court can look at to show that the shooting in question was accidental. In fact, all the allegations in this complaint are conclusive. You know, that he negligently handled the gun. They don't allege any facts whatsoever to indicate the manner and method in which he was handling the gun, what he was doing with the gun, just immediately before the shooting. In fact, as I mentioned earlier, Ms. Wells has no recollection of Mr. Farrell even holding the gun or retrieving the gun. She didn't see him with the gun. So how is she ever going to establish any fact as to what he was doing with the gun just before the shooting? Couldn't you infer that anybody that's intoxicated should not be handling a gun in the mere fact he was handling it under that state of mind? You could infer he was negligent. It's maybe not direct evidence, but you could infer that, couldn't you? In response to the intoxication issue, a number of things. One, it was not raised. Two, it's not pled. Three, there's no evidence that he was so intoxicated at the time of the occurrence that he didn't understand what he was doing. And lastly, Your Honor, the Kirwan case clearly states that an insurer that intentionally becomes intoxicated is not an excuse to avoid the intentional neglect exclusion of the case. So we believe that the intoxication issue, one, was never raised. Facts were never established to show that was in fact the case. And three, that even if it were the case, I think the Kirwan case is on point in establishing that you cannot voluntarily intoxicate yourself and use that as an excuse for your intentional neglect. Now, immediately after the shooting, which are some of the facts that were induced during the course of the underlying case as well as the deposition in this case, the conduct that Ms. Wallace testified to doesn't even allude or suggest some type of accidental conduct. The insurer did not apologize for the shooting. The insurer didn't take any action to call 911. The insurer just sat on the floor and admitted to the shooting. The insurer was capable after the shooting, again, facts with regard to the intoxication issue, to drive himself to a location where he was in a standoff with the police for some 11 hours. And that happened fairly shortly after the shooting? Yes. Ms. Wallace, after the shooting, came to, they had a slight exchange, and then she crawled out of the home to the neighbor's home where 911 was called. And by that time, Mr. Farrell had left the residence. Now, the inability to raise facts to establish allegations are insufficient to support a summary judgment. A court memory, the Illinois Supreme Court, said you cannot rely on the allegations of a complaint. You have to ignore, you have to prove with facts, circumstances to rise to support the allegations of a complaint. And that wasn't done here. In fact, as I mentioned, Ms. Wallace was unable to establish any facts with regard to the shooting to show that it accidentally occurred or that it in any way was accidental in nature. So we're to presume that because he had a gun that he intended to harm her? No, Your Honor. What you're to presume is that the burden is on the person making a claim under an insurance policy to establish that the conduct was sufficient to bring it within the coverage of the policy. And what conduct are you talking about? The shooting that took place. She was shot in the face. I understand that, but that's what I'm trying to get at. The conduct of having a gun or the conduct of intending to shoot her with the gun and harm her. It is the injury, the damages associated with bodily injury must be caused by an accident. There you get to the intent of the conduct. Was he intending to harm her? Or was he brandishing a gun, swinging it around recklessly? We don't know, do we? No, Your Honor, and they haven't established the fact that that conduct was accidental. And it's their burden to establish that the injury resulted from accidental conduct on the part of the insurer. It is their burden to establish that the injury was the result of some negligent accidental conduct. Or an occurrence. To me that's more neutral language or broader than an accident, where you maybe don't have, where you have less of a presumption that there was intent. There is no presumption requirement, Your Honor. There is a fact-required burden of proof in the case that requires the claimant and the insurer to establish that the injury was the result of accidental conduct. I'm trying to kind of follow this through on some other scenarios. Let's have, because we have the dead man's act and we have him deceased, so that's obviously a complication, and then she has amnesia. So let's presume that we don't know who the shooter was. We have no idea who the shooter was, and we have the same scenario with her really not seeing anybody shoot her. Let's say she has amnesia again, wakes up, and she's got a bullet through her eye. There's no proof there that it was an accident, because it could have been somebody that ran in the house and deliberately shot her. How does she prove it's an accident? Well, we have to go through a two-step process. First, she has to prevail on the underlying court action that the person that she's suing for coverage was actually liable for the injury. So if she's unable to establish her third proof in that case, she won't be able to recover against the defendant handling it. And that's exactly the point in this case. She hasn't shown in our... Wouldn't that be more like a hit and run or something? So you're saying if you have an insurance policy, let's say homeowners or something, and somebody comes in and shoots you through the eye, and you're not aware of who it was? You could recover... Your medical? Medical payments and under your medical insurance. And, you know, unfortunately, not every occurrence that takes place may be within the coverage of an insurance policy. Courts recognize that the term occurrence and the purpose of insurance policies is to protect the person buying the insurance policy by paying out injury claims that occur as a result of their accidental or negligent conduct, not from their intentional acts or conduct in the case. With regard to the Dead Man's Act, it's a defense in the underlying court action. The court needs to keep in mind here that the parties are aligned so that the Dead Man's Act is not an issue in our case. It's not relevant as to whether or not they could raise the Dead Man's Act to the farmer's case because they're aligned as parties in the same case. It's only where the parties are at first is where the Dead Man's Act has any application. So, again, Your Honor, the case here turns on whether or not the claimant and insurer, or in this case the estate of the insurer, can show or demonstrate any kind of act on the part of the insurer that was unintentional or accidental. And we believe that the record on its face is very clear that farmers was entitled to summary judgment because the claimant felt to meet her burden, the insurer felt to meet its burden, in establishing that any conduct that occurred that day was accidental in nature, which would trigger the coverage grant policy. Thank you. Thank you. So, Mr. Faulb and Mr. Skinner, you've divided your time, and Mr. Faulb, you're taking 15, is that correct? Yes, Your Honor. And Mr. Skinner's taking five. Yes, Your Honor. Let me proceed, Mr. Faulb. Thank you. I represent Roslyn Wells, the victim in this case. Just to clarify a few points that Mr. Worker pointed out. First of all, he mentioned something, and I couldn't quite hear all of his comments because I'm losing my hearing, but he mentioned about a police standoff. That's not part of this record at all, as far as I know. He also mentioned that my client was shot in the face. In actuality, she was shot in the entrance room. It was behind the right ear. The bullet went in, and it's a small entry wound. It came in a tunnel behind the skull and exploded out the right eye, causing her to lose her eye and lose her vision. So, basically, in this case, we have two provisions. It's a simple case of whether there's an occurrence. And secondly, once that is shown, whether the intentional explosion. How far were the guns or the gun hurt? Pardon me? How many foots did he shot the gun? A hundred times? Right. Just one. Right, but how far? The distance. Two inches, what? We don't know, and there was a mention in their brief that it was at point-blank range. There's no evidence of that whatsoever. What we have is their boyfriend and girlfriend for years. Rosalind Wells, my client's over at his house. They've spent the day together. They were drinking. He's on medication for a problem, emotional problem. Whether he was taking it or not taking it, we don't know. But we do know Rosalind Wells testified he's drunk. They're getting along. She wanted to leave later on in the evening. Didn't say it was one beats or anything from it? Not like a foot, two inches, what? From the shooting? Yes. I don't know. All I know is from what she testified to, they get into a slight argument. She wanted to go home. He really didn't want her to leave. You know, it's in the living room. There's no threats. He's not brandishing a gun. He's not doing anything. Not hitting her, threatening her. She's never seen him for four years even threaten someone with a gun at all. Does she remember everything right up to when she shot? She remembers. The last thing she remembers is that they were having a discussion about her alcohol. That's it. And then the next thing she knows, she's in the living room on the floor on a pillow. There's some liquid dripping down. And she looks up, and there he is. Mr. Perrow sitting on the floor with a pistol, and he's licking the barrel. And he says, dummy, I shot you. And that's it. And without any further threats, any other props, she leaves. Is your theory based entirely on his negligence or that his conduct could have been intentional but he was mentally relieved from responsibility based on the drugs or the alcohol or anything like that? Are there two theories or one theory? I think basically the one theory. Okay. Because the evidence is such that there's no evidence whatsoever he intentionally shot her. Okay. Okay. The difference is between these two provisions is that, as Judge Charles Chapman said in the Lyons case, in the occurrence, you can – Actually, it was Judge Melissa Chapman in the Lyons case. Oh, was it Melissa? Yes, it was. What was the year in that case? I thought it was terrible, didn't I? That's okay. This is a good one here. I think I'll just walk out right now. No, that's okay. Anyway, whoever the Judge Chapman was indicated that the word occurrence meant intentionally – you can intentionally do an act, and that's still an occurrence. And you said that you have to focus on the end result. And if you don't intentionally, if the insurer didn't intentionally shoot or intend the result, the damage, then it's still an occurrence. Okay. The problem with borrowers in this case, and the reason why they have to make these arguments, well, there's no duty to defend in the first place, we've got the burden of proof on occurrence, which is fine, is that under the intentional exclusion clause, they can't prove it. They have to prove intent and intent. In other words, intent to shoot the gun and intent to cause the harm. That's why I was asking about that earlier. So is it your position, then, that without showing them being able to – you just have to show that the occurrence didn't have any tinge, one way or the other, of intent to harm. Right. And once you do that, you believe, then, the duty arises. Right. Unless they can show that there was, in fact, the intent to injure. Right. I mean, you know, this policy's kind of confusing. It's their policy. I mean, why have an exclusionary clause when Mr. Worker's arguing that, well, we have to prove it's not an accident or an accident? Then why have an exclusionary clause in the first place? And we all know the case law is, if you have two clauses, they're in there for a reason. They're not to be saying the same thing. Okay. So theoretically, the most we have – and the most that would hurt me was that he's shooting a gun. That's it. We don't know what he was doing with the gun, whether he was shooting in the sky, on the floor, whatever. At a minimum, it could be argued that he didn't really intend to even pull the trigger. I mean, he could have been walking around drunk, you know, without his medications, and slipped and fell. The gun malfunctioned. Or he could have intentionally pulled the trigger but did not desire to shoot the gun. Maybe he thought the safety was on. Maybe he's pointing the gun at her, clicking it, you know, thinking there's no bullets in there, trying to scare her or impress her. Or the last, the third scenario, which is still an occurrence, is that he intended to pull the trigger. He knew there was a bullet in there, and he intended to fire the gun but wasn't aiming it. The gun had her. And that's still an accident, still an occurrence. Maybe he was just drunk, shooting in the sky, shooting any place just to scare her. Who knows? That's all we have. Because of all that, that minimal evidence, that's sufficient to show that it was an occurrence. There's nothing above that to cross the line that shows that this was an intentional event. In other words, he intentionally tried to harm her whatsoever. None whatsoever. Are you going to touch on at all the identification? As far as the identification or duty to defend? Yes, the duty to. No, I thought that the court also ruled that there was a duty to indemnify. Yeah, duty to indemnify. First of all, the court held that there was a duty to defend based upon the plea. Right. Okay. And secondly, I would like to mention that Judge Gleason, they take orders out of the context. He said, well, Judge Gleason deliberately construed the pleadings when making his final decision. Well, the truth of the matter was that was an oral argument, and his order actually said, I took into account everything, the law, the pleadings, the depositions when ruling for us, for the defendants in this case. But going back to indemnification, indemnification is once we prove or show that there's an occurrence, then it's therefore approved to show that it was an exclusionary act. In other words, the exclusionary exclusion has to apply for there to be no indemnification. But isn't it premature for the judge to rule at that point that they have a duty to indemnify? Isn't that that's after the fact, after there's a judgment, correct? I mean, that's what the case law says. There was a settlement between the insured and the victim, Rosalynn Wells, okay? And there were motions filed by everybody, original motion by Farmers and cross motions by Farrell and Wells. We filed a cross motion. So it was right, I believe, for the judge, based upon all the evidence, because that's the only evidence you're going to hear. In other words, yeah, okay. Because Rosalynn Wells is sole testimony and also the circumstantial evidence, where the bullet went in, the circumstances of where the shooting took place and that type of thing. You know, the bottom line is, in order for them to show there's no duty to indemnify, they have to show two intents. They have to show two mental states by Mr. Farrell, and they can't do it. First of all, the intent to fire the gun, and secondly, the intent to injure her with that bullet. And they can't do it. There's no evidence. What they're really trying to say is, Mr. Farrell intended to murder my client. Well, if he was going to murder my client, he should have done a better job of it. There he is sitting on the floor, licking a pistol, saying, dummy, I shot you. He's probably shocked or under the influence. And she leaves. If he was going to murder her, he would have completed the job. He didn't do it. And why he didn't call an ambulance or something, maybe he thought, I accidentally shot her. What am I going to do? And he's in shock about it. So I think the bottom line is, first of all, the pleas are sufficient to show that there is a duty to defend. There's no question about that. Why they bring that up, I don't know. Thornton v. Paul ruled the pleas were not sufficient because all that was said in Thornton, all that was played with in Thornton was the defendant negatively hit someone. That was it. We don't have that here. We've got a lot of facts to allege. Secondly, coverage is here because this was an occurrence. I've argued that that is a very confusing, very, very confusing clause, occurrence. Some people say it's an accident. But if you look down, it also uses the term event. That's not defined. Accident's not defined. Event's not defined. And if you will put in the exclusionary clause the word accident, it really reads bad. The exclusionary clause says there's no injury, there's no coverage if the injury results from any occurrence caused by an intentional act. Well, let's substitute the word accident. There's no coverage for an injury that results from any accident caused by an intentional act? That doesn't make sense. It's non-secular. So I think we're able to show that based upon the evidence, the evidence that we have here, there is absolutely no showing that this was not an accident. It's an event. It's an occurrence that took place, unfortunately, caused a terrible injury. And because of the fact that Farmers has this duty to prove, showing that this was, in fact, an intentional act, an intentional injury, they can't meet that burden of proof. So, therefore, Judge Gleason should be affirmed. Thank you very much. Thank you, Mr. Ball. Mr. Skinner. Thank you. May it please the Court, Brown, Greg Skinner. I'm on behalf of the estate of William Farrell. I do not have much to add to Mr. Favre's argument. I did want to touch briefly on the duty to defend, even though Mr. Worker really didn't touch on it very much. But my understanding of the law is that any allegations that potentially fall within coverage are sufficient. And that's what the Court found. All these issues were extensively briefed, and there were motions to reconsider, motions to clarify, at various points during this litigation. If any ambiguities were resolved in favor of the insurer, then I think there is no question with respect to the duty to defend that Farmers did have a duty to defend. Secondly, with respect to the occurrence, the definition of occurrence certainly is broader than accident, even within their own definition of the policy, because it makes reference to accidents or events. That's their language. Once again, if there's an ambiguity there, it's to be resolved in favor of coverage. So I think that it's pretty clear that plaintiffs have, we've met our burden with respect to showing that there has in fact been an occurrence. If Farmers fail to meet their burden with respect to showing that the act was intentional as well as the consequences of the act. That's all I have to add. Thank you, Mr. Skinner. Mr. Worker, you have rebuttal, opportunity. Counsel indicated that they met their burden in this case, but what proofs have they shown, what factual proof have they shown that the conduct was accidental during the coverage? There was also a comment made by counsel that it's Farmers' burden to show that the insurer intended the injury. There's two clauses in the insurance policy for the intentional act exclusion. One is intent to cause harm. The other is to do an act that is reasonably foreseeable to cause harm. And the court in Etna v. Fryer made a distinction between those two standards. For example, if I were to shoot into a crowd of people, I know that my conduct is likely to cause injury. I don't have to intend to shoot somebody specifically in the crowd. And the court held that that conduct is intentional in nature and is not covered by the insurance policy. They also make a point of arguing that there's some type of potential ambiguity in this policy. Similar language has been looked at ad nauseum in this state, and no ambiguity has ever been found with regard to the accidental requirement of an insurance policy. With regard to the question of, you know, why does Farmers have two clauses in their policy? In the coverage grant, they require it to be accidental, and then they turn around and exclude intentional conduct. That issue was raised in Etna v. Fryer, and it was rejected. It was rejected under the idea that the intentional act exclusion is just a reaffirmation of the fact that insurance policies only cover accidental conduct. Now, a little discussion was made with regard to Lyons. Lyons is a duty-to-defend case, and in this case, the court went further than the duty-to-defend and found that Farmers had a duty to indemnify based on the facts that were developed during the course of the underlying discovery in the case and the deposition of Rosalyn Wells that was taken in this case. There are no facts to establish any accidental conduct. You know, counsel raised a number of scenarios of what might have happened. Well, the plain fact is we don't know what happened. And the court can't find indemnity or requirement under a contract of insurance which only covers injury caused by accidental conduct on pure supposition or speculation. And that's what claimants and the insured are asking this court to do in the case. Farmers doesn't have to show that Mr. Farrow intended to kill or commit homicide in the case. All they have to do is, in the case, if we get past the initial burden of proof, which I don't believe that we can because there are no facts to establish what occurred, is to show that the act, and the acts that are based on the allegations of the underlying complaint, which is that he was handling a loaded gun, failed to check the safety, and was brandishing in the vicinity of the plaintiff in the underlying case. The gun went off and shot Rosalyn in the head, exiting through her face, okay, according to what the medical records show. There was no deposition establishing exactly how far the gun was from her head when he shot her, or any circumstance leading up to that moment in time. We just don't know what happened. And as a result of that, they can never meet the burden of proof in this case. And that is an essential element. Unlike Lyons, on a duty to defend, the issue there was whether or not the insured negligently put a form on a neighbor's property. It's an element of trespass. That's an element of trespass. But the focus by the defendant was that he intended to build that dam, so therefore it wasn't an accident. Right. But we switched the focus. We clarified that the focus was the intent caused the damage. Right, but it's an element of the underlying case of trespass, which requires intent to put, to enter somebody's property with an unlawful purpose. You know, that's much different than what we're talking about here. You know, and I believe that in that case- The focus was the intentional conduct to injure. And the reference to the case that went back to the 1800s, that Berry case, was that three men jumped off of a three-foot-high platform, and one injured himself and died a few days later. And the U.S. Supreme Court said it was obvious that there was deliberate intent to jump, but it was an accident that the injury occurred and subsequently he died. So you have to separate out just the intent of brandishing a gun and the intent to injure or harm someone. Or the patent of brandishing a loaded gun in close proximity to the plaintiff and whether or not that would cause injury. And that's more like the, is it the Vegas case, where there was actual, like a sexual assault, and the court said you can't really distinguish the two there because if you sexually assault someone, ipso facto, you have harm. Or like all the other Battery cases, where the court looked at the totality of the circumstances, the facts presented. For example, Allstate v. Carioto, a shooting in that case. The court looked at all the facts and surrounding circumstances and said no reasonable person could conclude that the injury was anything but intentional. Battery in that case. Thank you. Thank you very much. Very interesting case. Thank you both for your briefs and arguments. Take the matter under advice.